No. 2017-1315

# United States Court of Appeals
# for the Federal Circuit

PARCEL 49C LIMITED PARTNERSHIP,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA, and
TRAMMELL CROW COMPANY.

Defendants-Appellees.

Appeal from the United States Court of Federal Claims
in Case No. 16-427C, Judge Lydia Kay Griggsby

**DEFENDANT-INTERVENOR TRAMMELL CROW COMPANY'S
MOTION TO FILE CONFIDENTIAL BRIEF INCLUDING MORE THAN
50 REDACTED WORDS**

Pursuant to Federal Circuit Rule 27(m)(1)(A), Defendant-Intervenor Trammell Crow Company ("Trammell") respectfully moves to mark more than fifty words as confidential in its merits brief in this matter.  In every filing in this bid protest, Trammell has maintained two pieces of information as strictly confidential.  Good cause exists to maintain that confidentiality in Trammell's merits briefing before this Court.

-1-

First, Trammell seeks to protect information regarding its and Parcel 49C's pricing over the course of the procurement.  The Procurement Integrity Act prohibits disclosure of "contractor bid or proposal information or source selection information to any person other than a person authorized."  48 C.F.R. § 3.104-4.  "Bid prices submitted in response to an agency invitation for bids" is explicitly included in the definition of "source selection information."  *Id.* § 2.101.  Not only is this information confidential under applicable law, it is necessary for Trammell to rebut one of Parcel 49C's arguments.  Parcel 49 insinuates that something about Trammell's price demonstrates impropriety; yet, Trammell's citation to the full record removes the concern.

Second, Trammell seeks to protect a portion of the Agency's Final OCI Determination describing certain Trammell business practices.  The Procurement Integrity Act's definition of source selection information also includes "Reports and evaluations of source selection panels, boards, or advisory councils."  *Id.*  Furthermore, this information was withheld from the public version of this document during the Court of Federal Claims proceedings below.  (*See* Exhibit 1.)  Trammell asserts that citation to the full Final OCI Determination -- including the confidential paragraph -- is necessary to fully rebut Parcel 49C's arguments.

Trammell contacted counsel for both the Government and Parcel 49C, and neither party opposes this motion.

For the foregoing reasons, Trammell respectfully requests that this motion be granted and that Trammell be permitted to mark as confidential more than 50 words in its merits brief.

Dated:  March 16, 2017

Submitted By:

/s/ Stuart W. Turner

Stuart W. Turner
Ronald A. Schechter
Amanda Johnson
ARNOLD & PORTER KAYE
     SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C.  20001
Telephone: 202-942-5759
Facsimile: 202-942-5999
Email: Stuart.Turner@apks.com

*Attorney of Record for Defendant-*
*Intervenor Trammell Crow Company*

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Parcel 49C Limited Partnership v. United States and Trammell Crow Company
No. 2017-1315

**CERTIFICATE OF INTEREST**

Counsel for Defendant-Appellee Trammell Crow Company certifies the following:

1. The full name of every party or amicus represented by me is:

   Trammell Crow Company

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   CBRE Group, Inc.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   None

Dated:  March 16, 2017                    /s/ Stuart W. Turner
                                          Stuart W. Turner
                                          *Counsel for Defendant-Appellee*
                                          *Trammell Crow Company*

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2017, I caused a true and correct copy of the foregoing to be served upon the following counsel of record via email through the Court's CM/EC system:

Michael J. Slattery
Blank Rome LLP
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5155 (Telephone)
(202) 822-9544 (Facsimile)
Email: mslattery@blankrome.com

Richard J. Conway
Blank Rome LLP
1825 Eye Street, N.W.
Washington, D.C. 20006-5403
(202) 420-2235 (Telephone)
(202) 822-9544 (Facsimile)
Email: rconway@blankrome.com

William J. Grimaldi
United States Department of Justice
Civil Division - Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Email: william.j.grimaldi@usdoj.gov

/s/ Stuart W. Turner
Stuart W. Turner

# EXHIBIT 1

# UNITED STATES COURT OF FEDERAL CLAIMS

## BID PROTEST

| | |
|---|---|
| Parcel 49C Limited Partnership, ) | |
| ) | |
| Plaintiff, ) | No. 16:427C |
| ) | |
| v. ) | Judge Lydia Kay Griggsby |
| ) | |
| United States of America, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| Trammell Crow Company, ) | |
| ) | |
| Defendant-Intervenor ) | |

## <u>NOTICE OF FINAL, AGREED-UPON, REDACTED VERSION OF TAB 133 OF THE ADMINISTRATIVE RECORD</u>

Pursuant to paragraphs 12 and 14 of the Court's April 6, 2016 Protective Order, Parcel 49C hereby files the attached final, agreed-upon redacted version of the document produced by Defendant as Tab 133 of the Administrative Record.  Ex. A.  On July 29, 2016, Parcel 49C contacted the parties to the above-captioned protest and stated that it could not identify any protected information in Tab 133, and asked whether the parties had any objection to public release of the document.  Defendant did not object to the release of the document, but noted that the document contained information concerning the Defendant-Intervenor.  Defendant-Intervenor identified a portion of the first paragraph on page AR 2921 of the document that required redaction prior to public release.  Parcel 49C made this redaction, as demonstrated in Exhibit A.  The parties have satisfied the Protective Order requirements for public release of the attached document.

Dated: August 1, 2016                    Respectfully submitted,


                                         By:    ____/s/ Richard J. Conway_____
                                                Richard J. Conway
                                                BLANK ROME LLP
                                                1825 Eye Street, NW
                                                Washington, DC 20006-5403
                                                (202) 420-2235 (Telephone)
Of Counsel:                                     (202) 822-9544 (Facsimile)
Michael J. Slattery                             RConway@blankrome.com
BLANK ROME LLP                                  *Counsel of Record for Parcel 49C*
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5155 (Telephone)
(202) 822-9544 (Facsimile)
MSlattery@blankrome.com

Larry D. Blust
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 West Madison Street
Suite 4000
Chicago, IL 60602
(312) 604-2672 (Telephone)
(312) 604-2673 (Facsimile)
lblust@hsplegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date of August 1, 2016, I caused a copy of the foregoing

Notice of Final, Agreed-Upon Redacted Version of Tab 133 of The Administrative Record to be

served via electronic mail on the following:

> William J. Grimaldi
> Trial Attorney
> U.S. Department of Justice
> Civil Division - Commercial Litigation Branch
> P.O. Box 480
> Ben Franklin Station
> Washington, D.C. 20044
> Tel: (202) 616-0471
> Fax: (202) 514-8624
> william.j.grimaldi@usdoj.gov
>
> Stuart Turner
> Arnold & Porter LLP
> 601 Massachusetts Ave., NW
> Washington, DC 20001
> Office: +1 202.942.5759
> Mobile: +1 202.492.0949
> Stuart.Turner@APORTER.COM

>    /s/ Richard J. Conway   
> Richard J. Conway
> BLANK ROME LLP
> 1825 Eye Street, NW
> Washington, DC 20006-5403
> (202) 420-2235 (Telephone)
> (202) 822-9544 (Facsimile)
> RConway@blankrome.com
> *Counsel of Record for Parcel 49C*

Exhibit A

# REDACTED VERSION

GENERAL SERVICES ADMINISTRATION
NATIONAL CAPITAL REGION

FINDINGS AND DETERMINATIONS
IN REGARD TO ADEQUACY OF SAFEGUARDS AGAINST
ORGANIZATIONAL CONFLICTS OF INTEREST

## FINDINGS

I hereby find that:

In June of 2010, the U.S. General Services Administration (GSA) entered into a professional services contract for real estate consulting and related services (Broker Contract) with several suppliers, including CBRE. The Broker Contract was in effect as of September 29, 2014, on which date GSA engaged CBRE as the consultant to aid in the procurement of leased space to house the headquarters for the Federal Communications Commission (FCC). This engagement was accomplished by issuing Task Order GS-P-11-14-YL-0041 to CBRE.

The Broker Contract includes the provision numbered H.5. and titled "Organizational Conflicts of Interest". This provision cites Subpart 9.5 of the Federal Acquisition Regulation (FAR), 48 C.F.R. 9.5 which "prescribes responsibilities, general rules, and procedures for identifying, evaluating, and resolving organizational conflicts of interest." The Broker Contract thus clearly reflects an awareness of the possibility of organizational conflicts of interest in the brokerage firms that are parties to the Broker Contract, and adopts the FAR standards and procedures to identify whether such conflicts exist and, if so, how any such conflict may be mitigated.

The FAR standards applicable to the provision of professional consulting services require the Contracting Officer to "[a]void, neutralize, or mitigate significant potential conflicts before contract award." FAR 9.504(a)(2). In keeping with its standard practice, GSA required CBRE to conduct a preliminary survey of building locations that were eligible to submit bids in the contemplated procurement. Of the 44 identified buildings, CBRE identified three in which it had a potential conflict of interest. On September 29, 2014, CBRE submitted the "Organizational Conflict of Interest" disclosure document specified for this purpose in the Broker Contract. See *Exhibit 1* attached hereto. The submission noted that CBRE represents the lessor for the incumbent location of the FCC headquarters at 445 12th Street, SW, Washington DC (Parcel 49C)(Plaintiff in the Court of Federal Claims case.) CBRE also noted that it "might represent other potential offerors for new construction projects in the future; however a preliminary survey uncovered no such conflicts at this time." The GSA Contracting Officer administering the Broker Contract in the National Capital Region (NCR) prepared a Findings and Determination document, in which she found that adequate measures had been taken to mitigate the potential

Page 1 of 4

AR 2918

# REDACTED VERSION

conflict, and to provide adequate protection to the government. As the Contracting Officer's Technical Representative for the Broker Contract in NCR, I joined in these Findings and Determinations as well. See *Exhibit 2* attached hereto.

When initial offers were submitted, one of the offerors was Sentinel Square, which is an entity controlled by the Trammel Crow Company. Trammel Crow Company proposes to build a new building to satisfy the FCC's needs. Trammel Crow Company is an entity that is well known to me as an active developer and broker of commercial real estate in many locations in the United States, including Washington, DC. The offer was not submitted by or on behalf of CBRE.

At a subsequent point in time during the procurement, an allegation was made that CBRE has a potential undisclosed conflict of interest. This allegation is premised on the fact that CBRE has an ownership interest in Trammel Crow Company. In response to this allegation, I have taken certain actions to ensure the integrity of the procurement and the protection of the government's interests.

I approached CBRE for information about the alleged conflict. CBRE indicated that all procurement information was properly contained within a firewall at CBRE. No procurement information had been shared between CBRE and Trammel Crow Company, just as no such information had been shared internally at CBRE between the brokers representing Parcel 49C, and those representing the GSA. CBRE made a formal filing with this representation, attached hereto as *Exhibit 3*.

CBRE also informed me that the business relationship between CBRE and Trammel Crow Company likely does not rise to the threshold that would make a conflict of interest (as contemplated in the FAR) possible. CBRE describes itself at its own website (http://www.cbre.com/about/corporate-information) in the following terms:

> CBRE Group, Inc. is the world's largest commercial real estate services and investment firm, with 2015 revenues of $10.9 billion and more than 70,000 employees (excluding affiliate offices). CBRE has been included in the Fortune 500 since 2008, ranking #259 in 2016. It also has been voted the industry's top brand by the Lipsey Company for 15 consecutive years, and has been named one of Fortune's "Most Admired Companies" in the real estate sector for four years in a row. Its shares trade on the New York Stock Exchange under the symbol "CBG."
>
> The Company serves real estate owners, investors and occupiers worldwide. CBRE offers strategic advice and execution for property sales and leasing; corporate services; property, facilities and project management; mortgage banking; appraisal and valuation; development services; investment management; and research and consulting.

AR 2919

# REDACTED VERSION

As a large real estate conglomerate, CBRE has a great many ownership and partnership relationships with other business entities all over the world. The fact that CBRE and Trammel Crow Company have such a relationship does not necessarily create a conflict of interest as described in FAR 9.500, because the entities function as independent businesses and the connection between the entities is remote. The business world is full of interlocking corporate and ownership interests. In the case of Trammel Crow Company, it represents itself as a independently operated business entity, not as an alter ego of CBRE. A connection at this remote level is a lesser cause for concern than arises when the same brokerage firm represents both sides in a transaction, since the opportunity for improper sharing of information between rival separate brokerage firms with a common corporate ownership is less than the opportunities that might arise when two separate broker teams within the same brokerage firm are on opposite sides in a competitive procurement action.

Applying this standard, it is apparent that where, as in this procurement, the incumbent ownership is represented by a broker working directly for CBRE, the same brokerage firm as is working for GSA, the possible scenarios in which information might improperly pass between the two sides are far more numerous and plausible than is the case between two rival firms, regardless of common ownership interests. Therefore, the firewall procedures and safeguards in place that are adequate to mitigate the possibility of an internal organizational conflict of interest within CBRE itself, are certainly adequate to mitigate the possibile organizational conflict of interest that might exist between rival firms in common ownership.

FAR 9.504(d) instructs contracting officers to "avoid creating unnecessary delays, burdensome information requirements, and excessive documentation. The contracting officer's judgment need be formally documented only when a substantive issue concerning potential organizational conflict of interest exists."

FAR 9.504(e) states: "The contracting officer shall award the contract to the apparent successful offeror unless a conflict of interest is determined to exist that cannot be avoided or mitigated. Before determining to withhold award based on conflict of interest considerations, the contracting officer shall notify the contractor, provide the reasons therefor, and allow the contractor a reasonable opportunity to respond. If the contracting officer finds that it is in the best interest of the United States to award the contract notwithstanding a conflict of interest, a request for waiver shall be submitted in accordance with 9.503. The waiver request and decision shall be included in the contract file."

Despite the apparent lack of any substantive issue concerning potential organizational conflict of interest (pursuant to FAR 9.504(d)), I want to ensure that any theoretical conflict of interest has been mitigated (pursuant to FAR 9.504(e), and thereby resolve, using applicable regulatory

AR 2920

# REDACTED VERSION

procedures, even the possibility of the appearance of an unmitigated potential conflict of interest. Therefore, in addition to reviewing the OCI submission by CBRE regarding Trammel Crow Company attached hereto as *Exhibit 3,*

Based upon the representations made by CBRE, both in its Organizational Conflict of Interest submissions, and in respone to my further inquiries, it is apparent to me that the common ownership interest between CBRE and Trammel Crow Company likely does not create a conflict of interest as such is defined in the FAR, and that even if such a potential conflict arises from the fact of common ownership, it is properly mitigated by the firewall protections in place at CBRE as described in the Organizational Conflict of Interest submissions attached hereto as *Exhibits 1 and 3*.

## DETERMINATIONS

Therefore, I find and determine that there is no unmitigated conflict of interest arising from the business relationship between CBRE and Trammel Crow Company. I also find and determine that, to the extent there is an ongoing allegation of the existence of an unmitigated conflict of interest arising from the business relationship between CBRE and Trammel Crow Company, it is in the interest of the United States to award the lease contract to the apparent successful offeror notwithstanding the ongoing allegation of an unmitigated conflict of interest.

Dated: *July 22, 2016*

*Kevin M. Terry*  KEVIN TERRY

Kevin Terry
Contracting Officer
US General Services Administration
National Capital Region

## ORGANIZATIONAL CONFLICT OF INTEREST

*This form shall be completed for each task order by an officer of the contractor's firm.*

Contractor:        CBRE
Contract Number:    GS00P10BQD0001
Task Order Number:  GS-P-11-14-YL-0041

**This firm does <u>X</u> or does not \_\_\_\_ have a potential organizational conflict of interest, as described in Section H.5 of the above referenced contract, for task order number GS-P-11-14-YL-0041**

A preliminary survey of buildings that could potentially accommodate the requirement consists of forty four (44) properties. Of these options there are two (2) potential conflicts of interest:

    1025 F Street, NW, Washington, DC (The Woodies Building)
    445 12th Street, NW, Washington, DC (Incumbent location)

In addition to an organizational conflict of interest as described above, this firm does \_\_**X**\_\_ or does not \_\_\_ provide Property Management for any properties that would be a potential offeror for this task. Of the forty four (44) total options there is one (1) potential conflict of interest:

    601 D Street, NW, Washington, DC (Patrick Henry Building)

As required by Section H.5 of the contract, the contractor certifies the following measures are in place:

- A "conflict wall" is in place and contractor personnel have been advised of the restrictions in 1 through 13 of the clause.
- Electronic safeguards are in place to prevent unauthorized access to documents prepared in connection with this task order.
- Documents related to the contract will be safeguarded and secured while in the contractor's possession.

_____        \_\_\_\_**9/29/2014**\_\_\_\_\_
Name: Henry Chapman                    Date
Title: Vice Chairman

## REDACTED VERSION

AR 2922

ORGANIZATIONAL CONFLICT OF INTEREST

## TASK ORDER NUMBER GS-P-11-14-YL-0041
## FEDERAL COMMUNICATIONS COMMISSION

A preliminary survey for the required square footage revealed forty four (44) properties in the delineated area that could potentially meet the Government's requirements. Of these 44 properties, there are three (3) potential conflicts of interest:

| | |
|---|---|
| 1025 F Street, NW, Washington, DC (The Woodies Building) | Landlord Representation |
| 445 12th Street, SW, Washington, DC (Incumbent location) | Landlord Representation |
| 601 D Street, NW, Washington, DC (Patrick Henry Building) | Property Management |

CBRE represents the incumbent lessor. Based on their unsolicited offer, it is unlikely they will be the successful offeror, as they require that the Government leases 75,000 RSF more than is expected to be in the prospectus. CBRE may represent other potential offerors for new construction projects in the future; however a preliminary survey uncovered no such conflicts at this time.

The above conflicts are not expected to result in a dual agency for several reasons. Due to the number of potential properties in the delineated area, it is unlikely that the above buildings would express interest or furthermore submit an Initial Offer. Moreover, if the buildings do indeed submit Initial Offers, it is unlikely with the field of competition that one of the above buildings would ultimately become the successful Offeror.

As a result, CBRE should be allowed to continue working on this project pursuant to the updated policy which allows NBC contractors to go to the next step and advertise to determine if a potential conflict of interest emerges. Even if the buildings do express interest, or even submit an offer, the potential dual agency should be allowed. As stated, it is unlikely that one of these buildings would prevail or ultimately meet the Government's requirements. In the unlikely event that one of these properties is the successful Offeror, all of the conflict walls and mitigation requirements required by the contract have been and will continue to be met.

As described above, all elements of the conflict wall required under the NBC are fully employed and the Government should exercise their option to keep this task with CBRE, as it is in the Government's best interests. CBRE would like to continue on this project and does not believe there are any reasons to prohibit them from doing so.

# REDACTED VERSION

MODIFICATION PA20 January 25 2009

**AR 2923**

# REDACTED VERSION

### NATIONAL BROKER CONTRACT
### CONTRACTING OFFICER FINDING AND DETERMINATION
### DUAL AGENCY REQUEST
### TASK ORDER NUMBER GS-P-11-14-YL-0041
### 3DC0421

### FINDINGS

On September 23, 2014, task order number GS-P-11-14-YL-0041 was issued by GSA Regional Contracting Officer, Aliza Brown to CBRE, Inc. to provide lease acquisition services for competitive lease acquisition requirement for approximately 526,000 USF. On September 29, 2014, CBRE indicated that their firm did have a potential organizational conflict of interest, as described in Section H.5 of their contract. CBRE indicated that after a survey of buildings that could potentially accommodate the requirement, 44 properties were found. Of the 44, two buildings were considered potential conflicts of interests. CBRE further indicated that their firm provided property management for one of the 44 buildings.

CBRE indicated the following buildings as having potential conflicts of interest:

> 1025 F Street, NW, Washington, DC (The Woodies Building)
> 444 12th Street, NW, Washington, DC (Incumbent Location)

CBRE certified they provided Property Management (PM) services at the following location in the delineated area:

> 601 D Street, NW, Washington, DC (Patrick Henry Building)

On April 18, 2016, CBRE notified the COTR, Kevin Terry and the ZCO that there was a dual agency situation. CBRE indicated that they had received an offer from Sentinel Square III – 45 L Street, NW, Washington, DC. Sentinel Square III is represented by Trammel Crow, Inc., a wholly owned subsidiary of CBRE. CBRE and Trammel Crow Company are two separate brokerage firms however, their relationship to CBRE constitutes a dual agency.

At the request of the ZCO, updated Conflict of Interest forms were requested and submitted by CBRE on April 19, 2016, that described the introduction of the Sentinel Square III building to the procurement. It was found that initial offers were received on 10/20/2015. There were five initial offers of which two represented potential conflicts of interest; the incumbent location 445 12th Street and 45 L Street, Sentinel Square III.

The arrangement mentioned above between CBRE and Trammel Crow Company constitutes an organizational conflict of interest because of the dual agency situation.

# REDACTED VERSION

Contract Section/Paragraph H.5 (d)10 provides what actions both the contractor and GSA must take upon a potential conflict of interest identification. Paragraph H.5 (d) 10 states that the Contractor agrees:

> To immediately notify the Contracting Officer of any conflict of interest discovered during Contractor's performance of work pursuant to a government issued task order; provided that the Contracting officer shall have the right to impose such restrictions as he/she deems appropriate on Contractor's performance based on the existence of such a conflict or, if the contracting Officer determines that such restrictions would not adequately address the conflict of interest at issue, to terminate the Contractor's performance of work under the task order at no cost to the Government.

## DETERMINATION

In accordance with the Federal Acquisition Regulation (FAR) Part 3.101-1 and the provision contained in Section H of the broker contract, NCR's Contracting Officers have made a determination, that it is in the Government's best interest to retain CBRE's project team under this procurement. This decision is based on the following:

GSA lacks sufficient in house resources to perform the procurement in house and the only other alternative would be to re-task this project to another broker. The current project schedule indicates a lease award of October 1, 2017 and sufficient time to task another broker does not exist.

This is a large, complex procurement. To bring on another broker at this time will cause delay, stall the momentum and negatively impact our relationship with one of our most important customer agencies. It would take a new broker unnecessary time to "ramp up" on the procurement.

CBRE asserts that they have established a conflict wall in accordance with contract requirements to appropriately safeguard procurement sensitive data, thereby preserving procurement integrity.

CBRE has also provided the required dual agency notifications to all interested parties in the lease procurement.

Consequently, the identified organizational conflict of interest has been satisfactorily mitigated per requirements of the FAR.

Therefore, it is determined to be in the best interest of the Government to permit CBRE to operate in a dual agency capacity under Task Order Number GS-P-11-14-YL-0041.

# REDACTED VERSION

3
Dual Agency Request
GS-P-11-14-YL-0041
CBRE – GS00P10BQD0001

**ALIZA BROWN**

Digitally signed by ALIZA BROWN
DN: c=US, o=U.S. Government, ou=General
Services Administration, cn=ALIZA BROWN,
0.9.2342.19200300.100.1.1=47001000013499
Date: 2016.04.26 09:35:15 -04'00'

_____          _____
Aliza Y. Brown                                    Date
NCR Regional Contracting Officer

_Kevin M. Terry_ **KEVIN TERRY**

Digitally signed by KEVIN TERRY
DN: c=US, o=U.S. Government, ou=General Services Administration
cn=KEVIN TERRY 0.9.2342.19200300.100.1.1=47001000327124
Date: 2016.06.09 11:00:44 -04'00'

_____          _____
Kevin Terry                                       Date
Contracting Officer Technical Representative

_____          _____
Brad Harrison                                     Date  5/23/16
NCR Regional Program Manager

**Approved**

_____          _____
Danny Killian                                     Date
National Contracting Officer

_____          _____
Heather Cameron                                   Date
General Counsel
Real Property Division (LR)

AR 2926

REDACTED VERSION

AR 2927

# REDACTED VERSION

**DUAL AGENCY DISCLOSURE**
Acknowledgement (August 2010)

---

GSA Regional CO:            Offeror(s): `Trammell Crow Company`

---

Offeror's Property: `Sentinel Square III, 45 L Street NE`

**Dual Agency:** Dual Agency is a commission based tenant representation and an owner commission/fee relationship. The General Services Administration's allows a brokerage firm under this GSA contract to represent both the Government, as tenant, and another offeror in this real estate transaction as long as this is disclosed to all parties. Similarly, the contract allows the broker to represent the Government, as tenant and provide property management, consulting, or similar services to an offeror in the procurement as long as this is disclosed to all parties. This is known as dual agency. Under this GSA Contract, a brokerage firm may represent or have another form of business relationship with two clients whose interest are, or at times could be, different or adverse. Dual Agency under this GSA contract does not allow the same individual agent of the brokerage firm to represent both parties, and no individual with a personal financial interest may represent the Government. The Government brokers have conflict walls in place, are compliant with Federal Information Security Management Act and have other protections to safeguard the Government and Offeror information.

This statement discloses that <u>CBRE, Inc.</u> will be (or has been) acting as the GSA broker and Dual Agent in this procurement.

It is understood as a Dual Agent, the broker and the brokerage firm shall:
- Treat both clients honestly;
- Disclose latent, material defects to the Government, if known by the broker;
- Provide information regarding lenders, inspectors and other professionals, if requested;
- Provide market information available from a property listing service or public records, if requested;
- Prepare and present all offers and counteroffers at the direction of the parties;
- Assist both clients in completing the steps necessary to fulfill the terms of any contract, if requested.

It is also understood as Dual Agent, the broker and brokerage firm agrees to:
- Protect Offeror's proprietary information from unauthorized use and disclosure for as long as it remains proprietary and refrain from using the information for any other purpose than that for which it was furnished;
- Not disclose confidential information, or information having an adverse effect on one party's position in the transaction;
- Not suggest or recommend specific terms, including price, or disclose the terms or price the Government is willing to accept or any offeror is willing to offer;
- Not engage in conduct contrary to the instructions of any offeror and may NOT act in biased manner on behalf of any one party.

**Responsibilities of the Parties:** The duties of the brokerage firm in a real estate transaction do not relieve the Government and Offeror from the responsibility to protect their own interests. The Government and the Offeror are advised to carefully read all agreements to assure the terms adequately express their understanding of the lease transaction. The brokerage firm is qualified to provide advice on real estate matters. IF LEGAL OR TAX ADVICE IS DESIRED, YOU SHOULD CONSULT THE APPROPRIATE PROFESSIONAL.

NBC Contract #: GS00P10BQD0001           Page 1 of 2
20 May 2015



**AR 2928**

# REDACTED VERSION

**Exhibit 4C**

**Government Non Disclosure Requirements:** The Government requires complete confidentiality in all lease acquisition offers including non disclosure of the names of potential offerors. The Dual Agent brokerage firm, under a dual agency agreement, will be soliciting other competitive offers for the lease acquisition. By presenting this Dual Agency Disclosure, all interested offerors will be aware of the dual agency relationship; however, the Dual Agent brokerage firm cannot disclose the number, identity or rank of other offerors, or the content or evaluation of the other offerors proposals to the offeror in the Dual Agency relationship.

**Acknowledgement and Duration of Dual Agency and Confidentiality:** The Dual Agency shall automatically terminate upon (a) receipt of Unsuccessful Offeror notification or (b) in the event of a Successful Offeror notification; this agreement will terminate upon occupancy of the Government tenant. As agreed to above, the Dual Agency broker and brokerage firm will protect your information from unauthorized use or disclosure for as long as it remains proprietary and refrain from using the information for any purpose other than that for which it was furnished.

By signing the below, you acknowledge you have read and understand this form.

**Notice of dual agency to potential offerors for Solicitation**

By signing this Dual Agency Disclosure Statement you acknowledge that:

CBRE, Inc. Brokerage Firm will act as Dual Agent under this transaction.

April 11, 2016

**Offeror's Signature**      **Date**

**Government's Signature**      **Date**

**Broker's Signature**      **Date**

AR 2929

# REDACTED VERSION

### DUAL AGENCY DISCLOSURE
### Acknowledgement (August 2010)

GSA Regional CO:                 Offeror(s): Trammell Crow Company

Offeror's Property: Sentinel Square III, 45 L Street NE

**Dual Agency:** Dual Agency is a commission based tenant representation and an owner commission/fee relationship. The General Services Administration's allows a brokerage firm under this GSA contract to represent both the Government, as tenant, and another offeror in this real estate transaction as long as this is disclosed to all parties. Similarly, the contract allows the broker to represent the Government, as tenant and provide property management, consulting, or similar services to an offeror in the procurement as long as this is disclosed to all parties. This is known as dual agency. Under this GSA Contract, a brokerage firm may represent or have another form of business relationship with two clients whose interest are, or at times could be, different or adverse. Dual Agency under this GSA contract does not allow the same individual agent of the brokerage firm to represent both parties, and no individual with a personal financial interest may represent the Government. The Government brokers have conflict walls in place, are compliant with Federal Information Security Management Act and have other protections to safeguard the Government and Offeror information.

This statement discloses that <u>CBRE, Inc.</u> will be (or has been) acting as the GSA broker and Dual Agent in this procurement.

It is understood as a Dual Agent, the broker and the brokerage firm shall:
- Treat both clients honestly;
- Disclose latent, material defects to the Government, if known by the broker;
- Provide information regarding lenders, inspectors and other professionals, if requested;
- Provide market information available from a property listing service or public records, if requested;
- Prepare and present all offers and counteroffers at the direction of the parties;
- Assist both clients in completing the steps necessary to fulfill the terms of any contract, if requested.

It is also understood as Dual Agent, the broker and brokerage firm agrees to:
- Protect Offeror's proprietary information from unauthorized use and disclosure for as long as it remains proprietary and refrain from using the information for any other purpose than that for which it was furnished;
- Not disclose confidential information, or information having an adverse effect on one party's position in the transaction;
- Not suggest or recommend specific terms, including price, or disclose the terms or price the Government is willing to accept or any offeror is willing to offer;
- Not engage in conduct contrary to the instructions of any offeror and may NOT act in biased manner on behalf of any one party.

**Responsibilities of the Parties:** The duties of the brokerage firm in a real estate transaction do not relieve the Government and Offeror from the responsibility to protect their own interests. The Government and the Offeror are advised to carefully read all agreements to assure the terms adequately express their understanding of the lease transaction. The brokerage firm is qualified to provide advice on real estate matters. IF LEGAL OR TAX ADVICE IS DESIRED, YOU SHOULD CONSULT THE APPROPRIATE PROFESSIONAL.

AR 2930

# REDACTED VERSION

### Exhibit 4C

**Government Non Disclosure Requirements:** The Government requires complete confidentiality in all lease acquisition offers including non disclosure of the names of potential offerors. The Dual Agent brokerage firm, under a dual agency agreement, will be soliciting other competitive offers for the lease acquisition. By presenting this Dual Agency Disclosure, all interested offerors will be aware of the dual agency relationship; however, the Dual Agent brokerage firm cannot disclose the number, identity or rank of other offerors, or the content or evaluation of the other offerors proposals to the offeror in the Dual Agency relationship.

**Acknowledgement and Duration of Dual Agency and Confidentiality:** The Dual Agency shall automatically terminate upon (a) receipt of Unsuccessful Offeror notification or (b) in the event of a Successful Offeror notification; this agreement will terminate upon occupancy of the Government tenant. As agreed to above, the Dual Agency broker and brokerage firm will protect your information from unauthorized use or disclosure for as long as it remains proprietary and refrain from using the information for any purpose other than that for which it was furnished.

By signing the below, you acknowledge you have read and understand this form.

---

### Notice of dual agency to potential offerors for Solicitation

---

By signing this Dual Agency Disclosure Statement you acknowledge that:

<u>CBRE, Inc.</u> Brokerage Firm will act as Dual Agent under this transaction.

| | April 11, 2016 |
|---|---|
| **Offeror's Signature** | **Date** |

| Kevin M. Terry KEVIN TERRY | Rec'd April 12, 2016 |
|---|---|
| **Government's Signature** | **Date** |
| | 4/12/16 |
| **Broker's Signature** | **Date** |

AR 2931